No. 23-3085

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

HEIDE MONTOYA,

Appellee

v.

NATIONAL RAILROAD PASSENGER CORPORATION, doing business as AMTRAK,

Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
District Court Case No. 22-cv-04773
The Honorable Rebecca R. Pallmeyer

---

APPELLANT'S SUPPLEMENTAL JURISDICTIONAL
MEMORANDUM

---

Michael A. Wilder
mwilder@littler.com
Yara Mroueh
ymroueh@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Telephone:   312.372.5520
Facsimile:   312.372.7880

Attorneys for Defendant-Appellant
National Railroad Passenger Corporation, d/b/a
Amtrak

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ...................................................................................ii

I.     SUMMARY OF THE ARGUMENT ....................................................................1

II.    ARGUMENT ........................................................................................................2

        A.    Montoya Is Not Exempt from the FAA Because, as *Saxon* and *Bissonnette* Direct, She Is Not a Railroad Employee Actually Engaged in Commerce.....................2

        B.    When Determining a Plaintiff's "Class of Workers," Courts Must Reject an Industrywide Approach.....................................................................................3

        C.    Montoya Is Not A "Transportation Worker" Exempt from the FAA. .................5

        D.    Alternatively, the Arbitration Agreement Is Enforceable Under the Texas Arbitration Act, Or In The Alternative, Under the Illinois Uniform Arbitration Act. .......................................................................................................................7

        E.    Montoya Conceded that Jurisdiction Was Proper. ...............................................9

        F.    The District Court's September 26, 2023, Minute Order was Final and Appealable. ......................................................................................................10

III.   CONCLUSION..................................................................................................12

CERTIFICATE OF SERVICE .............................................................................14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amazon.com Servs., LLC v. De La Victoria*,
  No. 14-23-00493-CV, 2024 WL 3941376 (Tex. App. Aug. 27, 2024) ...................................10

*Atwood v. Rent-A-Center East Inc.*,
  No. 14-cv-1023-MJF-SCW, 2016 WL 2766656 (S.D. Ill. May 13, 2016).............................9

*Bissonnette v. LePage Bakeries Park St., LLC*,
  601 U.S. 246 (2024)...........................................................................................1, 2, 5, 6

*Boomer v. AT&T Corp.*,
  309 F.3d 404 (7th Cir. 2002) ...........................................................................10, 11, 12

*Cir. City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001).........................................................................................................1, 2

*Dallas Cardiology Assocs., P.A. v. Mallick*,
  978 S.W.2d 209 (Tex. App. 1998).......................................................................................8

*Fraga v. Premium Retail Servs., Inc.*,
  61 F.4th 228, 235 .................................................................................................................5

*Garrett Schuler, et al., v. B & L Systems, LLC,* et al.,
  No. 1:24-CV-219, 2024 WL 4035986 (W.D. Mich. Sept. 4, 2024) .........................................6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)...........................................................................................................10

*Hill v. Rent-A-Center, Inc.*,
  398 F.3d 1286 (11th Cir. 2005) ........................................................................................2

*Holman v. Indiana*,
  211 F.3d 399 (7th Cir. 2000) ..........................................................................................10

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)............................................................................................................8

*Intl. Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
  702 F.3d 954 (7th Cir. 2012) ............................................................................................2

*Kovelekie v. SBC Capital Markets, Inc.*,
  167 F.3d 361 (7th Cir. 1999) .....................................................................................11, 12

*Natgasoline LLC v. Refractory Constr. Servs., Co. LLC,*
    566 S.W.3d 871 (Tex. App. 2018) ........................................................8

*New Prime Inc. v. Oliveira,*
    139 S. Ct. 532 (2019) ...........................................................................7

*Osvatics v. Lyft, Inc.,*
    535 F.Supp.3d 1 (D.D.C. 2021) ..........................................................10

*Ovitz v. Schulman,*
    133 Cal. App. 4th 830 (2005) ...............................................................8

*Rogers v. Lyft, Inc.,*
    452 F.Supp.3d 904 (N.D. Cal. 2020) ....................................................5

*Sain v. Transcanada U.S. Servs.,*
    Civil Action H-22-2921 (S.D. Tex. Jan. 25, 2023) ...............................8

*Saxon v. Sw. Airlines Co.,*
    No. 19-CV-00403, 2023 WL 2456382 (N.D. Ill. Mar. 10, 2023) ..............3, 7, 9

*Washington v. Sears Logistics Servs., Inc.,*
    No. 3:13-CV-3060-L, 2014 WL 2159253 (N.D. Tex. May 23, 2014) ...........8

*Sherwood v. Marquette Transp. Co. LLC,*
    587 F.3d 841 (7th Cir. 2009) ................................................................9

*Singh v. Uber Techs., Inc.,*
    67 F.4th 550, 559 (3d Cir. 2023) ......................................................4, 5

*Southwest Airlines v. Saxon,*
    596 U.S. 450 (2022 ..................................................................*passim*

*Wallace v. Grubhub Holdings, Inc.,*
    970 F.3d 798 (7th Cir. 2020) ................................................................6

**Statutes**

9 U.S.C. § 1 ...............................................................................*passim*

9 U.S.C. § 16 ......................................................................1, 10, 11

28 U.S.C § 1291 ....................................................................................9

Illinois Uniform Arbitration Act ..............................................*passim*

Tex. Civ. Prac. & Rem. Code §§ 171.001–.098 ....................................8

Texas Arbitration Act .......................................................1, 8, 9, 12

## I.     SUMMARY OF THE ARGUMENT

On September 17, 2024, this Court ordered the parties to file supplemental jurisdictional memoranda addressing: (1) whether 9 U.S.C. § 16 applies to this case in light of 9 U.S.C. § 1 and the Supreme Court's decision in *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024); and (2) whether the District Court has denied a request for arbitration or has simply deferred decision pending further factual development.  [D.E. No. 31].  In response, Appellant-Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") states as follows:

Section 16 of the Federal Arbitration Act ("FAA") does apply, the FAA applies to the dispute, and the railroad worker exemption in Section 1 of the FAA does <u>not</u> apply. And, the District Court's Order denying Amtrak's Motion to Compel was final and appealable, so this Court has jurisdiction over the appeal under the FAA.

Appellee-Plaintiff Heide Montoya ("Montoya") filed this action against Amtrak asserting claims arising from her employment with Amtrak as a Superintendent of On-Board Services in violation of a Mutual and Mandatory Binding Arbitration Agreement that she accepted with Amtrak. The FAA applies to the Agreement and mandates its enforcement.

Section 1 of the FAA provides a narrow exemption for "seamen, railroad employees," and other "similar class" of "transportation workers" *actually engaged in* interstate commerce.  9 U.S.C. § 1; *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001). In its rulings, *Southwest Airlines v. Saxon*, 596 U.S. 450 (2022), followed by the more recent ruling, *Bissonnette v. LePage Bakeries Park St., LLC* 601 U.S. 246 (2024), the Supreme Court rejected an "industrywide" approach to the Section 1 exemption, making it clear that only railroad workers whose work is actually engaged in interstate commerce fit within the "narrow" exemption.  As shown below, Montoya cannot meet her burden to show that her work renders her exempt.  But even if the FAA does not apply, the Agreement is also enforceable under the Texas Arbitration Act, or alternatively,

the Illinois Uniform Arbitration Act. Therefore, the result is the same—Montoya must prosecute her claims in arbitration, not federal court.

Further, Montoya bears the burden of demonstrating that this Court lacks jurisdiction over her claims. Not only has she failed to do so, but she conceded that jurisdiction was proper in her Appellee Brief. (Brief of Plaintiff-Appellee at 2.)

Lastly, the District Court's September 26, 2023, Minute Order was final and appealable, because the District Court expressly denied Amtrak's Motion to Compel Arbitration, even though it noted that, if the parties could not reach a settlement, next steps should be further briefing and/or a hearing or trial on the issue.

## II.  <u>ARGUMENT</u>

### A.  Montoya Is Not Exempt from the FAA Because, as *Saxon* and *Bissonnette* Direct, She Is Not a Railroad Employee Actually Engaged in Commerce.

Consistent with the "pro-arbitration purposes of the FAA," the Supreme Court is clear: The Section 1 exemption must be given a "narrow construction" and a "precise reading." *Cir. City Stores, Inc.*, 532 U.S. 105 at 118–19; 9 U.S.C. § 1. As the Supreme Court emphasized, "the fact that the provision is contained in a statute that 'seeks broadly to overcome judicial hostility to arbitration agreements'" counsels in favor of a "precise reading of a provision that exempts contracts from the FAA's coverage." *Id.* at 118–19.

The Supreme Court, this Court, and other appellate courts further confirm that the Section 1 exemption is limited to "transportation workers" (such as seamen and railroad employees) who are "actually engaged in the *movement of goods in interstate commerce*." *Id.* at 112, 119 (emphasis added); *see Intl. Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) (holding truck drivers qualify as exempt transportation workers for purposes of FAA *only if* they transport *goods across state lines*); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286,

2

1290 (11th Cir. 2005) (holding application of FAA exemption requires regular, rather than occasional, "interstate transportation"). *Saxon* provided clear direction regarding the scope of Section 1 generally. It also provided a two-step analysis for determining whether the exemption applies. First, a court must define the "relevant 'class of workers' to which [the plaintiff] belongs," and second, it determines "whether that class of workers is "engaged in foreign or interstate commerce." *Saxon*, 596 U.S. 450 at 1788.

### B. When Determining a Plaintiff's "Class of Workers," Courts Must Reject an Industrywide Approach.

The Court in *Saxon* expressly rejected the "industrywide approach" to determine the "relevant 'class of workers' to which [a plaintiff] belongs." *Id.* at 1787. The plaintiff in *Saxon* argued that "because air transportation 'as an industry' is engaged in interstate commerce, 'airline employees' constitute a 'class of workers' covered by § 1." *Id.* The Court rejected that all-encompassing, industrywide approach, explaining that the FAA does not support such a broad approach. *Id.* Instead, the language of the FAA is clearly focused on "the actual work that the members of the class, as a whole, typically carry out." *Id.* The Court concluded that the plaintiff "is therefore a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.* The plaintiff in *Saxon* was a ramp supervisor who frequently loaded and unloaded cargo. *Id.* Therefore, the relevant "class of workers" in that case was not all of the airline's employees, but rather those workers who, like the plaintiff, "physically load[ed] and unload[ed] cargo on and off airplanes on a frequent basis." *Id.* at 1789.[1]

---

[1] Ultimately, on remand, the District Court granted Southwest's Renewed Motion to Compel Arbitration, finding that the Arbitration Agreement was valid under the Illinois Uniform Arbitration Act. *Saxon v. Sw. Airlines Co.*, No. 19-CV-00403, 2023 WL 2456382 (N.D. Ill. Mar. 10, 2023).

The Court clarified that this reasoning also applied to "seamen" and "railroad employees," the other enumerated types of workers in the exemption.  *See id.* at 1790–91.  Even though a broad definition of workers could include "everyone from cargo loaders to shift schedulers to those who design Southwest's website," the plaintiff in *Saxon* argued that the "class of workers" should be defined as "all airline employees who carry out the 'customary work' of the airline," rather than just cargo loaders. *Id.* at 1790. The plaintiff argued that this broader result was supported by the language of the exemption because, under the *ejusdem generis* canon, "'railroad employees' and 'seamen' refer generally to employees in those industries providing dominant modes of transportation in interstate and foreign commerce." *Id.* at 1791 (citations omitted). But the Court rejected the notion that "seamen" and railroad employees" are "industrywide categories" out of hand.  *Id.* To the contrary, though the statute does not define "railroad employees," history demonstrates that "seamen" refers to only a small subset of workers of workers who actually work on the vessel, as opposed to all workers in general. *Id.* The Court concluded that the "narrow definition of 'seamen' shows that the two terms cannot share a 'common attribute' of identifying transportation workers on an industrywide basis." *Id.* at 1791. Accordingly, the Court **"reject[ed] [the] argument that § 1 exempts virtually all employees of major transportation providers**." *Id.* (emphasis added).

Circuit Courts of Appeals have reiterated the Supreme Court's rejection of the industry-wide approach, characterizing the ***entire*** exemption as requiring a "job centered on interstate commerce." In *Singh v. Uber Techs., Inc.,* for example, the Third Circuit concluded that "Congress' use of the enumerated categories of 'seamen' and 'railroad employees,' when coupled with the narrow construction due the exception, convinces us that the residual clause includes only those workers whose jobs are centered on interstate commerce." 67 F.4th 550, 559 (3d Cir. 2023), *as*

*amended* (May 4, 2023), *cert. denied,* 144 S. Ct. 566 (2024). Likewise, the First Circuit in *Fraga v. Premium Retail Servs., Inc.,* "adhere[d] to the view that the class of workers to which a worker belongs for purposes of applying the section 1 exemption is based on what the worker does at the company, not what the company does generally[.]" 61 F.4th 228, 235 (citations omitted). Because the Supreme Court rejected an industrywide approach to determining the relevant class of workers, and because "seamen" as used in Section 1 is limited to a subset of workers who are actually engaged in commerce, like "other class of workers," under the *ejusdem generis* canon, the entire exemption must be read as requiring an actual engagement to interstate commerce. *Singh,* 67 F.4th 550 at 559 (rejecting argument "that there is no way to know that the key shared characteristic of 'seamen' and 'railroad employees' is having a job centered on interstate commerce"). "Congress meant to identify engagement in interstate commerce as the enumerated categories' key shared characteristic." *Id*. "The FAA's text makes it explicit—the residual clause requires that a class of workers is 'engaged in interstate commerce[,]'" and "[t]his text is "the best evidence of Congress' intent." *Id*. (citations omitted).

### C.     Montoya Is Not A "Transportation Worker" Exempt from the FAA.

Under this standard, Montoya must demonstrate that the exemption applies to work that she performed, rather than merely point to the fact that she is employed by a railroad company. *See Bissonnette,* 601 U.S. 246 at 243. Montoya, "as the part[y] resisting arbitration, bear[s] the burden of proving that this exemption applies." *Rogers v. Lyft, Inc.*, 452 F.Supp.3d 904, 913 (N.D. Cal. 2020). She has not done so.

The only information Montoya provides regarding the work that she performed is in the Complaint and in the undisputed declarations submitted in support of the parties' briefing on Amtrak's Motion to Compel Arbitration.  In her Complaint, Montoya admits to the following job duties:

- Montoya was employed as a Superintendent of On-Board Services at Amtrak's Chicago office. (Defendant-Appellant's Supplemental Appendix, SA0069, ¶ 10).
- In her role as Superintendent of On-Board Services, Montoya "supervised employees responsible for 'creating a welcoming atmosphere of hospitality for Amtrak passengers.'" *Id.*
- Montoya had a "team" comprised of eight managers and twelve supervisors who oversaw over 400 employees. *Id.*
- In 2019, Montoya received the Presidential Award for Excellence in *Leadership*. *Id.*
- Montoya was a department manager, and she was conducting an investigation into a potential violation of Amtrak's Conflict of Interest policy. (Defendant-Appellant's Supplemental Appendix, SA0069, ¶¶ 21, 27)

But transportation workers are defined by "what they do, not for whom they do it." *Bissonnette*, 601 U.S. 246 at 255. Montoya, a manager of a department investigating alleged conflict of interest violations, does not perform the kind of work directly involved in transporting goods across state lines, and thus, does not meet the narrow exemption of Section 1. *Saxon*, 142 S. Ct. at 1790 (to be exempt from the FAA, the worker "must at least play a direct and 'necessary role in the free flow of goods' across borders"). An employee does not qualify as a transportation worker for Section 1 purposes if they provide a service that is removed from the actual transportation of goods, even if the services are provided to a company that transports goods in interstate commerce. *Id.* "[S]omeone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020); *GARRETT SCHULER, et al., Plaintiffs, v. B & L SYSTEMS, LLC, et al., Defendants,* No. 1:24-CV-219, 2024 WL 4035986, at *3 (W.D. Mich. Sept. 4, 2024) (rejecting argument that Plaintiffs, employed as Logistics Consultants, Freight Brokers, and Carrier Procurement Representative and Dedicated Operations Representative for a logistics and transportation company in the shipping and freight sector were exempt from the FAA under Section 1 because the plaintiffs did not play a direct and 'necessary role in the free flow of goods' across borders, and instead were limited to "facilitating"

the flow of goods across borders).  Any connection between Montoya's employment and interstate commerce is, at most, tangential and minor, as she is not "typically," "frequently," "directly," "physically," or "intimately" engaged in interstate commerce.

Contrast Montoya's work with the cargo loaders in *Saxon*, for example. There, the cargo loaders "who physically load and unload cargo on and off planes traveling in interstate commerce" on a "frequent basis" met the standard under the exemption of engaging in interstate commerce. 596 U.S. 450 at 1789. The Court found it important that loading and unloading cargo from airplanes occurred while the "[interstate] transportation [is] still in progress." *Id*. at 1790 (internal quotation omitted).  But the Court refused to extend its holding to other airline employees such as shift schedulers and website designers or those with "duties further removed from the channels of interstate commerce or the actual crossing of borders." *Id*. at 1789-91, fn. 2 ("we need not address those questions to resolve this case").

Critically, in finding that cargo loaders met the standard under the exemption, words such as "typically," "frequently," "directly," "physically," and "intimately" are used.  *Id.* at 1788. Here, none of these adverbs correctly qualify Montoya's work, as she does not typically, frequently, directly, physically, or intimately engage in interstate commerce or any work that may be closely related to it.  (Defendant-Appellant's Supplemental Appendix, SA0069, *generally*).

Accordingly, Montoya cannot demonstrate that she is exempt under the FAA. Therefore, the FAA applies to Montoya and Amtrak's Arbitration Agreement.  Montoya should be compelled to arbitrate her claims under the FAA.

> **D.     Alternatively, the Arbitration Agreement Is Enforceable Under the Texas Arbitration Act, Or In The Alternative, Under the Illinois Uniform Arbitration Act.**

Though the Court determines for itself whether the FAA applies, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019), the Arbitration Agreement provides that the arbitrator determines

the law that governs the Agreement. (Defendant-Appellant's Supplemental Appendix, SA0016, Section 13.0. Applicable Law). Further, the Arbitration Agreement states that should the FAA not apply, Montoya and Amtrak "mutually stipulate and agree" that the Texas Arbitration Act applies, and in the alternative, the applicable state arbitration act (in this case, the Illinois Uniform Arbitration Act) applies. *Id.* The Agreement states, in relevant part:

> *Amtrak and Employee expressly agree and stipulate that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) will apply to this Agreement, which evidences a transaction involving commerce. If the Federal Arbitration Act does not apply, Amtrak an Employee mutually stipulate and agree that the Texas Arbitration Act will apply. If the Texas Arbitration Act does not apply, Amtrak and Employee mutually stipulate and agree that the applicable state arbitration act, if any, of the state where the dispute took place will apply. Any disputes about what law governs this Agreement will be decided by the arbitrator.*

*Id.* Accordingly, even if the FAA did not apply, Montoya would still be subject to arbitration under the Texas Arbitration Act ("TAA"). Like the FAA, the Texas Arbitration Act has a liberal policy in favor of arbitration. Tex. Civ. Prac. & Rem. Code §§ 171.001–.098; *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 214 (Tex. App. 1998); *Ovitz v. Schulman*, 133 Cal. App. 4th 830, 852–53 (2005). The standard to compel arbitration is the same under both the FAA and TAA, which results in the same finding: Montoya must be compelled to arbitration. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002); *Natgasoline LLC v. Refractory Constr. Servs., Co. LLC,* 566 S.W.3d 871, 884 (Tex. App. 2018) (noting moving party's burden identical under TAA and FAA). Critically, the TAA does not have a transportation worker exemption. *Washington v. Sears Logistics Servs., Inc.,* No. 3:13-CV-3060-L, 2014 WL 2159253, at *1 (N.D. Tex. May 23, 2014) ("the Texas Arbitration Act does not exempt transportation workers' contracts from arbitration"); *Sain v. Transcanada U.S. Servs.*, Civil Action H-22-2921, at *3 (S.D. Tex. Jan. 25, 2023) ("The TAA does not contain an exemption for workers engaged in foreign or interstate commerce").

Alternatively, the Arbitration Agreement is also enforceable under the Illinois Uniform Arbitration Act ("IUAA"). The Agreement provides that if the Texas Arbitration Act does not apply, the parties "mutually stipulate and agree" that the IUAA applies. (Defendant-Appellant's Supplemental Appendix, SA0016, Section 13.0. Applicable Law). If the Court were to conclude that Texas law does not apply, the Agreement is also enforceable under Illinois law.

Unlike the FAA, the IUAA has no exemption for transportation workers. *See Sherwood v. Marquette Transp. Co. LLC*, 587 F.3d 841, 843 (7th Cir. 2009) (holding that arbitration agreements may be enforced as contracts under state law, even if the agreement falls outside the scope of the Federal Arbitration Act); *Atwood v. Rent-A-Center East Inc.*, No. 14-cv-1023-MJF-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016) (finding that the IUAA, unlike the FAA, lacks an exemption for transportation works and compelling arbitration under the IUAA); *Saxon,* 2023 WL 2456382, at *4 (on remand, granting motion to compel arbitration under the law of the forum state, Illinois, which has no exemption for railway workers).

Therefore, under the Arbitration Agreement's "Applicable Law" section, should Montoya be held exempt from the FAA, the Arbitration Agreement remains enforceable under the Texas Arbitration Act, and in the alternative, the Illinois Uniform Arbitration Act.[2]

### E.     Montoya Conceded that Jurisdiction Was Proper.

In her Appellee Brief, Montoya conceded that jurisdiction was proper. Specifically, in her Jurisdictional Statement, Montoya stated:

> *The Seventh Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C § 1291 because this appeal is taken from a final decision of the District Court, that is, a final judgment (Court Docket ("D") 27) decided by the United States District Judge Rebecca R. Pallmeyer, dated and entered on September 26, 2023, denying Defendant-Appellant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.  Any order denying a motion to*

---

[2] The Agreement is clear that Illinois law applies to the substantive claims. (Defendant-Appellant's Supplemental Appendix, SA0012-13, Section 7.5(e). Arbitration Process).

> *compel arbitration is immediately appealable.  Boomer v. AT&T Corp., 309 F.3d
> 404, 413 (7th Cir. 2002); 9 U.S.C.A. § 16.*

(Brief of Plaintiff-Appellee at 2.).

As set forth above, Montoya is not exempt from the FAA.  Nor did Montoya raise an objection to the applicability of the FAA to the District Court.  The challenge to the applicability of the FAA should have been raised by Montoya to the Court, where she should have provided evidence that she was exempt from the FAA under Section 1.  An argument not raised to the lower court is typically found to be waived.  *See Holman v. Indiana*, 211 F.3d 399, 406 (7th Cir. 2000).

However, presuming that Montoya may properly raise an exemption issue for the first time in her response to this Court's supplemental request, Montoya still has the burden of proving that the transportation-worker exemption applies based on the evidence before the trial court at the time of its ruling, *i.e.*, Montoya's Complaint. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, (2000); *Osvatics v. Lyft, Inc.*, 535 F.Supp.3d 1, 9 (D.D.C. 2021); *see also Amazon.com Servs., LLC v. De La Victoria*, No. 14-23-00493-CV, 2024 WL 3941376, at *5 (Tex. App. Aug. 27, 2024). As shown above, the evidence before the Court demonstrates that Montoya is not exempt from the FAA under Section 1.

### F.     The District Court's September 26, 2023, Minute Order was Final and Appealable.

On September 26, 2023, the District Court held a second telephonic hearing on Amtrak's Motion to Compel Arbitration.  (**Exhibit A**, September 26, 2023 Transcript) During the hearing, the District Court stated, "I need to deny the motion, and I want to explain why.  I say – I'm denying it in spite of the fact that I really believe that it's likely that Ms. Montoya was aware of the arbitration agreement, that she did agree to it, and that the motion should ordinarily be granted." *Id.* The District Court went on to say:

"I understand Ms. Montoya is still employed by Amtrak or has returned to employment at Amtrak. So I'm not exactly sure what her damages are, but I wonder whether the two of you could talk about settling this case before we proceed with further briefing on the issue of whether the arbitration agreement is binding…Why don't I ask for you to confer with your client and then with one another and maybe give me a joint statement in about 14 days whether you are interested in a conference or whether you think you are going to be able to make some progress on you own or whether you, instead, believe that the next steps should be further briefing and/or a hearing or trial."

*Id*. at p. 5.

Following this hearing, the Court issued a Minute Order, stating the following, in relevant part: "For the reasons stated on the record, the court denies Defendant's motion to compel arbitration and dismiss plaintiff's complaint…The parties are therefore encouraged to explore the possibility of settlement and are directed, on or before 10/10/23, to submit a joint statement on the status of such efforts or, in the alternative, other plans for resolution of Ms. Montoya's dispute." (**Exhibit B**, September 26, 2024 Minute Order).

Based on this Order, the District Court's decision was final and appealable. The denial of a motion to compel arbitration is immediately appealable under Section 16(a)(1) of the FAA, even if further discovery is required or the district court intends to revisit the issue. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 413 (7th Cir. 2002); *see also Kovelekie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 363 (7th Cir. 1999) (holding that a district court's denial of a motion to compel arbitration was immediately appealable even though the district court had held that further discovery was needed before it could conclusively rule on a motion to compel arbitration); 9 U.S.C.A. § 16.

In *Boomer*, similar to here, the Court pointed out that the District Court entered an order expressly stating that the motion to compel arbitration was denied. *Id*. at 412. Although the plaintiff in *Boomer* contended that the appellate court lacked jurisdiction over the appeal because the District Court also entered a Minute Oder which directed the parties "to confer and advise the

Court within 10 days as to whether a separate trial should be ordered on [the arbitration counts] before the remaining counts of Plaintiff's Amended Complaint", this Court rejected that argument. *Id*. at 412–13.  While this Court acknowledged that the District Court intended to reconsider the question of arbitrability following further fact-finding and possibly a trial, this did not defeat the Circuit Court's jurisdiction.  *Id*.

Here, the District Court expressly denied Amtrak's Motion to Compel Arbitration on the record during the telephonic hearing and then via its Minute Order. (Exhibits A, B). Despite the District Court's note that additional briefing, discovery and/or a hearing or trail *may* be needed, like *Boomer* and *Kovelekie*, the District Court's decision denying Amtrak's Motion was final and appealable.

### III.   <u>CONCLUSION</u>

Montoya and Amtrak clearly and unmistakably agreed to arbitrate the disputes Montoya raised in her litigation. Section 1 of the FAA does not exclude Montoya from the FAA's scope, nor alter the conclusion that Montoya must proceed with her claims in individual arbitration. If this Court finds that Montoya is exempt from the FAA under Section 1, Montoya must still be compelled to arbitrate her claims under the Texas Arbitration Act, or in the alternative, under the Illinois Uniform Arbitration Act. The District Court's decision denying Amtrak's Motion to Compel Arbitration should be reversed.

Dated: September 24, 2024                    Respectfully submitted,

*/s/ Michael A. Wilder*
Michael A. Wilder
mwilder@littler.com
Yara Mroueh
ymroueh@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100

Chicago, IL 60654
Telephone: 312-372-5520
Facsimile:  312-372-7880

Attorneys for Defendant-Appellant
National Railroad Passenger
Corporation, d/b/a Amtrak

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF (electronic case filing system), and that the below counsel of record was electronically served via the Court's CM/ECF system:

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
rmajor@major-law.com

/s/ Michael A. Wilder

# EXHIBIT A

<pre>
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3

 4    HEIDE MONTOYA,                    )
                                        )
 5                    Plaintiff,        )   Docket No. 22 C 4773
                                        )
 6             vs.                      )
                                        )
 7    NATIONAL RAILROAD PASSENGER       )   Chicago, Illinois
      CORPORATION d/b/a AMTRAK,         )   September 26, 2023
 8                                      )   1:09 p.m.
                      Defendant.        )
 9

10              TRANSCRIPT OF PROCEEDINGS - Status
         BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER
11

12    APPEARANCES:

13

14    For the Plaintiff:       THE LAW OFFICES OF RUTH I. MAJOR, P.C.
                               BY:  MS. RUTH I. MAJOR
15                             77 West Wacker Drive, Suite 4500
                               Chicago, Illinois  60601
16

17    For the Defendant:       LITTLER MENDELSON, P.C.
                               BY:  MS. YARA MROUEH
18                             321 North Clark, Suite 1000
                               Chicago, Illinois  60654

19

20

21

22

23    Court Reporter:          FRANCES WARD, CSR, RPR, RMR, FCRR
                               Official Court Reporter
24                             219 S. Dearborn Street, Suite 2524A
                               Chicago, Illinois  60604
25                             (312) 435-5561
                               frances_ward@ilnd.uscourts.gov
</pre>

1    (The following proceedings were had telephonically:)

2    THE COURT:  Hi.  This is Judge Pallmeyer.

3    Just let me know when everybody is ready.

4    THE CLERK:  We are ready, Judge.

5    THE COURT:  Oh, okay.  You can call the case.

6    THE CLERK:  22 CV 4773, Montoya versus National

7    Railroad Passenger for status.

8    THE COURT:  Good afternoon.

9    I wonder if I can get your appearances for the

10   record.  We will begin with counsel for plaintiff.

11   MS. MAJOR:  Good afternoon, your Honor.

12   Ruth Major on behalf of Heide Montoya.

13   THE COURT:  Good afternoon, Ms. Major.

14   And for the defendant.

15   MS. MROUEH:  Good afternoon, your Honor.

16   This is Yara Mroueh for defendant, Amtrak.

17   THE COURT:  Good afternoon.

18   I wanted to get you on the phone because I have

19   spent more time working on the motion to compel arbitration

20   in this case.  I thought it would be easier for me to explain

21   my ruling orally than in writing.

22   I need to deny the motion, and I want to explain

23   why.

24   I say -- I'm denying it in spite of the fact that I

25   really believe that it's likely that Ms. Montoya was aware of

1  the arbitration agreement, that she did agree to it, and that

2  the motion should ordinarily be granted.

3  Here is the reason I can't get there.

4  When I'm writing it, I come up with too many

5  problems.  Let me just identify the two that bother me the

6  most.

7  I had asked at our last conference for defendant to

8  provide the version of the arbitration agreement that, in

9  their view, Ms. Montoya was bound by.  I assumed that it

10  would be very much -- I assumed it would be the version that

11  had been circulated to all managers in April of 2018, because

12  it seemed to me the cleanest way to resolve this case in

13  favor of the defendant would be to say: It was circulated in

14  2018.  Ms. Montoya was aware of it.  She continued working

15  for Amtrak even after its circulation, and the language of

16  the agreement makes it clear that continued employment

17  constitutes agreement.

18  Again, that email came out in April '18.  The

19  version of the arbitration agreement that Amtrak has

20  submitted was dated June 1 of 2018.  There is probably an

21  easy explanation for this, but it hasn't been provided to me.

22  The second issue that I had was the concern that I

23  think Ms. Major has emphasized or tried to emphasize in the

24  last hearing that we had.

25  I know that there was -- let's call it a technology

1    explanation for the fact that when Ms. Montoya went on to her

2    portal in 2022 to see what it was she executed back in 2019,

3    the only thing she found was a certificate of compliance.

4    There was no attached arbitration agreement.

5        That's been explained in a couple of different

6    places, in an affidavit and also in briefing by Amtrak as

7    follows: that really every year the employees did not need to

8    execute the arbitration agreement.  They only needed to do

9    that once.  So thereafter the only thing that would show up

10   would be the certificate of compliance.

11       Once Amtrak realized this, they were able to go

12   back in and repopulate these fields.  I think I understand

13   that explanation.

14       The reason that didn't get me all the way to

15   understanding completely what I could write in this is that,

16   Ms. Montoya points out that the version of the certificate of

17   compliance that she pulled up from 2022 is not the same that

18   appears there now.  It contains difference fields.

19       It's just not clear to me what exactly -- the

20   technological explanation didn't quite work for me, and it's

21   not possible for me to put in writing exactly what happened

22   in a way that makes sense to me.

23       I just want to make a couple of other points, and I

24   know you may want to be heard on this.

25       Arbitration is supposed to be a less expensive and

1  swifter way of resolving a dispute than litigation. If

2  anything, this whole episode illustrates that that isn't

3  always the case. It's been very complicated even to find out

4  whether or not this arbitration agreement is binding.

5          It also strikes me -- and this is not necessarily

6  relevant to the decision, but it strikes me that this problem

7  that we are having would have been so simply resolved outside

8  of fancy technology.

9          All that Amtrak needed to do was provide the paper

10  copy of an agreement -- I know this is very retro -- invite

11  its employees to take a look and sign it; explain to them

12  that if they don't return a signed copy, they must be deemed

13  to have resigned their employment; and then put a copy of --

14  a piece of paper in a folder. Maybe make an extra copy and

15  give it to everybody.

16          Again, this would be a very retro way of going

17  about recordkeeping. I suppose there's even a comfort in

18  doing it online, but we wouldn't be having these confusions.

19          And then the final comment I wanted to make. I

20  understand Ms. Montoya is still employed at Amtrak or has

21  returned to employment at Amtrak. So I'm not exactly sure

22  what her damages are, but I wonder whether the two of you

23  could talk about settling this case before we proceed with

24  further briefing on the issue of whether the arbitration

25  agreement is binding.

1          MS. MAJOR:  On behalf of Ms. Montoya, I'm sure she

2     would be -- you know, we have attempted in the past, but I

3     know she would continue to be willing to try to resolve it.

4          THE COURT:  What's Amtrak's position on that?

5          MS. MROUEH:  Your Honor, first, we agree on your

6     evaluation of what Ms. Montoya's damages are.  And we welcome

7     additional settlement discussions.  We were just waiting on

8     the ruling on this issue.

9          THE COURT:  Would you want the case referred to the

10    magistrate judge to proceed on that, or would you like to

11    talk to me about it?  It's completely -- or maybe it makes

12    more sense for the two of you just to have a conversation

13    about it, at least initially?

14         MS. MROUEH:  Your Honor, this is Yara for Amtrak.

15         I would just need to verify with my client how they

16    would prefer to proceed on that.

17         THE COURT:  All right.  That's fine.

18         Why don't I do this.  Why don't I ask you to confer

19    with your client and then with one another and maybe give me

20    a joint statement in about 14 days whether you are interested

21    in a conference or whether you think you are going to be able

22    to make some progress on your own or whether you, instead,

23    believe that the next step should be further briefing and/or

24    a hearing or trial.

25         MS. MAJOR:  That sounds great, your Honor.  I would

1  be happy to talk with Amtrak and my client and see if we can

2  figure out a way to maybe get this resolved.

3          THE COURT:  All right.  Great.  Well, thank you.

4          MS. MAJOR:  Thank you very much, your Honor.

5          MS. MROUEH:  Thank you, your Honor.

6          MS. MAJOR:  Have a great day.

7      (An adjournment was taken at 1:16 p.m.)

8                    *    *    *    *    *

9  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

10

11  /s/ Frances Ward_____October 5, 2023.
    Official Court Reporter
12  F

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1**
**Eastern Division**

Heide Montoya

                          Plaintiff,

v.                                                              Case No.: 1:22–cv–04773
                                                                Honorable Rebecca R.
                                                                Pallmeyer

National Railroad Passenger Corporation d/b/a
Amtrak

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, September 26, 2023:

      MINUTE entry before the Honorable Rebecca R. Pallmeyer:Telephone conference held. For the reasons stated on the record, the court denies Defendant's motion to compel arbitration and dismiss plaintiff's complaint [11]. The motion to extend the date for submission of a joint planning report [7] is granted nunc pro tunc. As explained in greater detail orally, the court is unable to prepare a decision on the current record in this case; the court is uncertain that it has seen the then–current version of any Arbitration Agreement that Ms. Montoya may have had access to in 2018. And despite Defendant's explanation of the computerized record, the court is uncertain how it is that the version of the Certificate of Compliance that Ms. Montoya reviewed when she accessed her employment portal in 2022 differs at least in minor ways from the one that Amtrak asserts she executed electronically in 2019. It is possible (perhaps even likely) that these questions can be answered, but Ms. Montoya remains (or is again) employed by Defendant and her damages may be modest. The parties are therefore encouraged to explore the possibility of settlement and are directed, on or before 10/10/2023, to submit a joint statement on the status of such efforts or, in the alternative, other plans for resolution of Ms. Montoya's dispute. Mailed notice. (cp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.